## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

SHEILA K. SWEETEN,            )
                             )
              Plaintiff,      )
                             )
v.                           )    Case No. CIV-15-094-JHP-KEW
                             )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social        )
Security Administration,      )
                             )
              Defendant.      )

### REPORT AND RECOMMENDATION

Plaintiff Sheila K. Sweeten (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ."  42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 21, 1957 and was 56 years old at the time of the ALJ's decision. Claimant completed her high school education and obtained an associate's degree. Claimant has worked in the past as a medical technologist. Claimant alleges an

inability to work beginning December 30, 2011 due to limitations resulting from stress, anxiety, chronic back, hip, and knee pain, OCD, and panic attacks.

## Procedural History

On May 24, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge ("ALJ") Bernard Porter on April 22, 2014 by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma. The ALJ issued an unfavorable decision on July 8, 2014. On January 13, 2015, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a range of medium work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to determine that Claimant met a listing; (2) reaching an unsupported RFC finding; and (3) making inadequate findings at step five.

## Consideration of a Listing

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, migraine headaches, a history of gastroesophageal reflux disease ("GERD"), history of right colon diverticulosis, bipolar disorder, and post-traumatic stress disorder ("PTSD"). (Tr. 17). He concluded that Claimant retained the RFC to perform a range of medium work. In so doing, the ALJ found Claimant could lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; stand and/or walk six hours in an eight hour workday; and sit for six hours in an eight hour workday. She was precluded from climbing any ladders or scaffolds or perform any crawling. She was found to be unable to read very small print but could read ordinary newspaper style print. She should not work around unprotected heights, around moving mechanical parts, or in environmenets with temperature extremes. Claimant was limited to simple tasks and simple work-related decisions with occasional interaction with co-workers, supervisors, and the public. Time off tasks would be accommodated by normal

workday breaks but she would be off task up to 5% of the workday and may miss up to one day of work per month due to episodic symptomology. (Tr. 20). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of hand packager, box maker, and order puller, all of which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 24). Based upon these findings, the ALJ concluded Claimant was not disabled from December 30, 2011 through the date of the decision. (Tr. 25).

Claimant contends the ALJ should have found that she met a listing. Specifically, Claimant contends that she meets Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). The ALJ is required to follow the procedure for determining mental impairments provided by regulation. 20 C.F.R. §§ 404.1520a, 416.920a; *See*, Listing of Impairments. The procedure must be followed for the evaluation to be considered valid. <u>Andrade v. Sec. of Health & Human Services</u>, 985 F.2d 1045, 1048 (10th Cir. 1993). The ALJ must first determine whether there are medical findings of mental impairment especially relevant to the ability to work found in Part A of the Listing of Impairments. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Additionally, Claimant must show he satisfies two of the following required restrictions: (1)

marked restriction in activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00C, 12.04. The ALJ must then either evaluate the degree of functional loss resulting from the impairment, using the Part B criteria, or examine the special criteria set forth in the listings for evaluating the severity of particular impairments. In asserting a condition meets a listing, a claimant bears the burden of demonstrating that his impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Claimant states in a later argument that the ALJ failed to make findings concerning paragraph A. The ALJ certainly could have provided a more complete analysis of his paragraph A findings in his decision. His evaluation of the paragraph B criteria, however, finds adequate foundation in the medical record to find that it is supported by substantial evidence. The fact the ALJ's discussion of paragraph A is somewhat wanting is not fatal to the decision since both paragraphs' criteria must be met.

The ALJ determined Claimant had mild limitations in performing

her daily activities, moderate limitations in social functioning, moderate limitations in attention, concentration, persistence, and pace, and Claimant has had no episodes of decompensation of extended duration. (Tr. 18-19). While Claimant cites to several instances in the record where she was diagnosed with various conditions which affected the four functional areas in Part B, she does not direct this Court to any references which would indicate that she suffered from greater limitations than found by the ALJ.[2] Claimant refers to an allegedly definitive letter from the Department of Veterans Affairs dated July 20, 2011 which indicates Claimant would be terminated from her employment after a probationary period because she cries and is distressed without the ability to manage the problem. (Tr. 228). While indicative of a potential problem, this generalized reference does not satisfy the requirements of Part B for a listing.

Moreover, the ALJ's findings on the four domains of Part B are supported by the disability determination services psychologists' findings. Dr. Burnard Pearce and Dr. Corine Samwel both determined the same level of limitation as adopted by the ALJ and both found

---

[2] Later in her briefing, Claimant cites to the opinions of Dr. Chambers and Dr. Spray as finding Claimant suffers from a marked limitation in attention and concentration. Even if this evidence is taken as true and not discounted as was done by the ALJ in his decision, this marked limitation in a single domain would not change the listing determination.

Claimant did not meet a listing.  (Tr. 33-35, 45-46).  This Court finds no error in the ALJ's determination that Claimant did not meet a listing at step three.

## RFC Assessment

Claimant finds several deficiencies in the ALJ's RFC assessment.  Claimant states the ALJ improperly disregarded the medical opinion of Dr. Donald Chambers.  Dr. Chambers determined Claimant had a marked limitation in sustaining attention and application of tasks.  (Tr. 232).  Claimant contends this opinion was supported by other evidence including the opinion of Dr. Robert Spray dated August 15, 2012.  Dr. Spray found Claimant's attention and concentration were "poorer than one might assume from her job history.  She is forgetful."  (Tr. 251).  He also found a marked limitation in attention and concentration in a medical source statement dated September 2, 2014.  (Tr. 245).

The ALJ determined the medical evidence, including Dr. Chambers' treatment records, was inconsistent with Dr. Chambers' opinion.  He cited to the fact Claimant returned to Dr. Chambers' in June of 2012 after a seven year absence to seek treatment and received medication.  (Tr. 22).  In a July, 2012 visit, Dr. Chambers found the medication was helping.  She returned because she was not thinking clearly and Dr. Chambers adjusted her

medication.  About a month later, Dr. Spray noted Claimant's IQ was average and she persisted well at the examination.  (Tr. 19).  The ALJ concluded that Dr. Chambers' provided no documentation to support his summary of treatment and the functional limitations he listed.  As a result, he gave Dr. Chambers' position "minimal weight."  (Tr. 23).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight."  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003).  An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record."  <u>Id</u>. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  <u>Id</u>.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  <u>Id</u>. (quotation omitted).  The factors reference in that section are:  (1) the length of the treatment relationship and the frequency of examination; (2) the

10

nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ did not proceed through the Watkins factors. Given the support for the reduction in weight given by the ALJ to Dr. Chambers' opinion, this omission might be excusable. But a part of the basis for the reduction in weight was support in Dr. Spray's

subsequent opinion. Yet, Dr. Spray found Claimant was markedly limited in attention and concentration which was consistent with Dr. Chambers' opinion. (Tr. 245). While the timing between Dr. Chambers' opinion and Dr. Spray's opinion was almost two years, the consistency between the opinions gives greater weight to the findings by Dr. Chambers. On remand, the ALJ shall assess Dr. Chambers' opinion and the consistency of that opinion with the consultative examiner's source statement. He shall also evaluate the totality of the <u>Watkins</u> factors.

## Step Five Analysis

Since the ALJ is required to re-evaluate the opinions of Dr. Chambers and Dr. Spray, he shall also reassess whether the RFC should be modified as well as the hypothetical questions to the vocational expert.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the

date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE